UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICCARDI E. SENAT,

                    Petitioner,

vs.                                    Case No.  2:06-cv-641-FtM-29DNF

STATE OF FLORIDA DEPARTMENT OF
CORRECTIONS,

                    Respondent.
_____


## OPINION AND ORDER

Petitioner Riccardi Senat (hereinafter "Senat" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on November 3, 2006,[1] which he subsequently amended (Doc. #8, Amended Petition) on December 6, 2006.  Senat is proceeding on his Amended Petition, which challenges his plea-based conviction for armed robbery with a firearm arising out of the Twentieth Judicial Circuit, Collier County, Florida (case number 99-1787-CFA), for which Senat was sentenced to twenty-five (25) years in prison, with a ten (10) year minimum mandatory term.  Respondent filed a Response (Doc. #20, Response) to the Petition, and exhibits in

_____

[1]The Petition (Doc. #1) was docketed and filed in this Court on November 30, 2006, after being transferred by the United States District Court for the Southern District of Florida.  See Doc. #3. The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."  Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

support thereof (Exhs. 1-22).  See Doc. #24, Respondent's Notice of Filing Exhibits (exhibits not scanned).  Despite the Court directing Petitioner to file a reply to the Response on three separate occasions, Petitioner has failed to file a reply to the Response.  See Docs. #15, #22, and #23.  Consequently, the Court deems this matter ripe for review, without the benefit of a reply from Petitioner.

**I.**

The procedural history of this case is set forth in the two volume record on appeal submitted by the State (Exh. #22, Vol. I and Vol. II).  On September 14, 1999, Senat was charged by information with one count of armed robbery with a firearm.  Exh. 22, Vol I at 15-16.  The Public Defender was appointed to represent Senat.  Id. at 19.  On November 21, 2000, Senat, represented by Assistant Public Defender Shannon Brown, entered a negotiated plea of guilty to the offenses charged in the information.  Exh. 1, Transcript of Plea and Sentencing.  The terms of the plea agreement are memorialized in the written plea agreement, which was executed by Senat.  Exh. 22, Vol. I at 93-94.

At the change of plea hearing, the prosecutor, Mr. Deifik, told the state court judge that Senat's attorney had persuaded the State to enter into plea negotiations.  Exh. 1 at 3.  Mr. Deifik explained Senat was presently informed of being a prison releasee reoffender, and if he were convicted at trial, which the prosecutor believed was a reasonable likelihood, Senat would be facing a

mandatory term of life in prison. Id. Mr. Deifik stated to the court that "[t]he State's interest is in finality . . . as well as severity of punishment." Id. Mr. Deifik informed the court that defense counsel, in his motions to suppress, had raised sufficient ambiguities regarding the identification of the perpetrator of the robbery by the victim, and viable appellate issues existed regarding the court's ruling concerning the suppression of Senat's confession, to convince the State to negotiate a plea in this matter.[2] Id. at 3-4.

Defense counsel advised the court that the parties agreed that the State would withdraw the prison releasee reoffender notice and Senat would enter a guilty plea to the charge of robbery with a firearm, a first-degree felony punishable by life in prison. Id. at 4. Senat, however, would be "sentenced pursuant to the 10-20-life statute to a ten-year minimum sentence to a total sentence of 25 years in the Department of Corrections." Id. Mr. Deifik clarified that Senat must serve the first ten years "day for

---

[2]Three motions to suppress were filed by defense counsel. On October 19, 2000, a motion to suppress Senat's statement and confession to police and a motion to suppress the photo line-up identification by the victim, Ms. Betty Tucci, were filed. Exh. 22 at 46-47, and 48-49, respectively. The court held an evidentiary hearing on November 13, 2000, at which time the State advised the court that they did not oppose suppression of the photo line-up. Id. at 148-242, 150. Consequently, the court granted the motion to suppress the photo identification line-up. Id. at 150. At the conclusion of the hearing, the court orally denied the motion to suppress the confession. Id. at 242. Defense counsel then filed a third motion on November 20, 2000, the day before the change of plea hearing, seeking to suppress the in-court identification by the victim, Ms. Betty Tucci. Id. at 71-92.

day." Id. With regard to the "second portion of the sentence, the 15 years," Mr. Deifik explained this time would "be served pursuant to the law of the State of Florida[,] while he may get gain time that is not promised him, and we will go through that in his - - in the plea colloquy." Id. at 4-5. Additionally, the State agreed that Senat would not be remanded to the custody of the Department of Corrections until January 3, 2001. Id. at 5. Defense counsel, Ms. Brown, agreed that the State had accurately represented the terms of the agreement to the court. Id.

Senat was then placed under oath and questioned by Mr. Deifik. Id. at 6. Senat stated he understood the plea agreement and had executed it. Id. Mr. Deifik then went over each of Senat's individual rights with him, and Senat affirmed that he understood each of the constitutional rights, and further understood that, by entering a guilty plea, he was giving up those rights in return for the agreed-upon sentence. Id. 6-10. In particular, Senat stated that he understood he was giving up his right to appeal "all matters that have occurred up to this time, that, specifically, you give up your right to appeal the rulings of Judge Pack in regard to the Motion to Suppress and any other rulings that may have been made previously in this case?" Id. at 9. It was explained to Senat that he did have the right to challenge the "legality" of his sentence, and could also mount a collateral attack at a later point in time. Id. at 9-10. Senat stated that he had an opportunity to consult with his attorney, as well as discuss his possible

-4-

defenses, and was satisfied with the advice of his attorney. <u>Id.</u> at 10-11.

In response to whether Senat believed that the plea was in his best interest, he stated "Yes." <u>Id.</u> at 11. The prosecutor set forth the following factual basis for the guilty plea:

> MR. DEIFIK: Now I'm going to ask you, sir, that on August 18th, 1999, did you go into the 7-Eleven store where Ms. Tussi --here in Collier County where Ms. Tussi was a clerk and, by use of a firearm, threatened to use a firearm, take property that was within her custody and the cash drawer containing some United States currency, and take that from her custody and remove it from the 7-Eleven store?
>
> THE DEFENDANT: Yes, I did.
>
> MR. DEIFIK: And was that done with the intent to convert that United States currency to your use or to the use of another person?
>
> THE DEFENDANT: To another person.
>
> MR. DEIFIK: And that his occurred here in Collier County?
>
> THE DEFENDANT: Yes, it did.
>
> MR. DEIFIK: And that the black item that she has described in your hand as a gun was, in fact, a firearm?
>
> THE DEFENDANT: It was an unloaded weapon.
>
> MR. DEIFIK: We understand that, but was it a pistol?
>
> THE DEFENDANT: Yes, it was.

<u>Id.</u> at 12-13. Senat denied that he was promised any benefit to enter into the plea, other than what was contained within in the plea agreement. <u>Id.</u> at 13. Senat denied being under the influence of any drugs or suffering from any mental illness or disability.

Id. at 14.  Defense counsel confirmed that she had read the plea agreement in its entirety to Senat and no other assurances were given to Senat to enter the plea.  Id. at 14-15.

The court then inquired whether Senat understood he was waiving his right to a trial, to testify or not on his own behalf, to present witnesses and examine the State witnesses, to have the State prove its case beyond a reasonable doubt, and any appellate rights, except as to jurisdiction and legality of sentence.  Id. at 16-17.  The court also confirmed that Senat was satisfied with his counsel's representation, and Senat conceded to the factual narrative of the crime as previously set forth by the prosecution. Id. 17-18.  Finally, the court verified that Senat understood that he would be sentenced to 25 years, "ten years of which are mandatory."  Id.  at 18.

The court then determined that the "plea was freely and voluntarily made" and accepted the plea.  Id. at 19.  Immediately thereafter, pursuant to the plea agreement, Senat was adjudicated guilty and sentenced "to 25 years with the Department of Corrections, ten years which shall be a mandatory minimum sentence under the rules and statutes of the State of Florida."  Id.

On August 30, 2002, Senat filed a petition for writ of habeas corpus seeking a belated appeal.  Exh. 22 at 127-134.  Senat claimed that he asked defense counsel to appeal the court's denial of the suppression of his confession, but counsel did not file the appeal.  Id.  On October 16, 2002, the appellate court granted

Senat's petition for a belated appeal.  Exh. 2; <u>Senat v. State</u>, 833 So. 2d 136 (Fla. 2d DCA 2002).

Appointed counsel filed an <u>Anders</u>[3] Brief on behalf of Senat, stating that he could find no meritorious argument to support the contention that the trial court committed significant reversible error.  Exh. 3.  The State filed its Anders brief, and after being granted permission, Senat filed a *pro se* initial brief.  Exhs. 5-6. On January 16, 2004, the appellate court *per curiam* affirmed Senat's conviction and sentence, without opinion.  Exh. 7; <u>Senat v. State</u>, 872 So. 2d 908 (Fla. 2d DCA 2004).  Senat's motion for rehearing was denied, and  mandate issued on April 19, 2004.  Exh. 8-10.

On April 14, 2004, Petitioner filed a *pro se* Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850, in which he alleged four grounds of ineffective assistance of counsel: (1) misadvising Senat that, by entering a plea, he would still be able to appeal the court's denial of his motion to suppress his confession; (2) misadvising Senat as to the actual amount of time he would serve; (3) failing to raise a "voluntary intoxication" defense; and (4) misadvising Senat that the defense would not be applicable to the charge of robbery.  Exh. 11.  The State filed a response acknowledging grounds one, two and four of the Rule 3.850 motion required an evidentiary hearing and seeking

---

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967).

summary denial of ground three.  Exh. 12.  On June 16, 2004, the
post-conviction trial court summarily denied ground three, and
granted an evidentiary hearing on grounds one, two and four.  Exh.
13.

On October 1, 2004, an evidentiary hearing was held at which
Senat was represented by appointed counsel.  Exh. 14.  Testimony
was offered by Senat and his previous trial counsel, Shannon Brown.
On December 2, 2004, the post-conviction court issued a written
order denying grounds one, two and four of the Rule 3.850 motion.
Exh. 15.  Senat, proceeding *pro se*, appealed the post-conviction
trial court's October 1, 2004 order.  Exh. 16.  The State filed an
answer brief.  Exh. 17.  Senat filed a reply brief.  Exh. 18.  On
April 19, 2006, the appellate court *per curiam* affirmed the post-
conviction trial court's denial of post-conviction relief.  Exh.
19; <u>Senat v. State</u>, 932 So. 2d 1112 (Fla. 2d DCA 2006).
Petitioner's motion for a rehearing and clarification was denied,
and mandate issued on June 30, 2006.  Exhs. 20-21.

## II.

Petitioner filed the instant Petition for Writ of Habeas
Corpus November 3, 2006, which the Court deems timely.[4]  Petitioner

---

[4]Respondent does not address the timeliness issue.
Independently, the Court finds the Petition timely filed due to the
State court granting Petitioner motion for belated direct appeal.
<u>Jimenez v. Quarterman</u>, ___ U.S. ___, 129 S. Ct. 681, 686
(2009)(holding that "where a state court grants a criminal
defendant the right to file an out-of-time direct appeal during
state collateral review, but before the defendant has first sought
(continued...)

identifies the following grounds for relief in his Amended Petition.

     I.   Defendant Received Ineffective Assistance of Counsel When Counsel Misadvised Him Concerning His *Nolo Contendere* Plea That Resulted in His Plea Being Involuntary.

     II.  Defendant Received Ineffective Assistance of Counsel When Counsel Misadvised Him Concerning the Actual Amount of Time He Would Serve.

     III. Trial Counsel Was Ineffective When She Failed to Require the Court to Establish a Factual Basis Before Accepting the Defendant's Plea.

     IV.  Trial Counsel Was Ineffective When She Failed to Pursue a Voluntary Intoxication Defense.

Amended Petition at 4-5. Additionally, Petitioner raised the following grounds in his Memorandum of Law in Support of Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #9, Petitioner's Memorandum).

     V.   The State Court Improperly Denied the Motion for Post-Conviction Relief in That the Prejudice Prong of the <u>Strickland</u> Test Was Established; Post-conviction Counsel Was Ineffective for Failing to Object to the Introduction of a Letter During the Evidentiary Hearing; and, the Post-Conviction Court Improperly Ruled That Certain Issues Were Cognizable Only on Direct Appeal. (Restated).

     VI.  The State Court's Failure to Follow its Own Law in Regard to the Post-conviction Proceedings Violated the Principle of *Stare Decisis*. (Restated).

---

[4](...continued)
federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)."

Petitioner's Memorandum at 15, 17.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007)(citation omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

### A. Federal Question

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Violations of a state rule of procedure, or of state law itself, is not itself a violation of the federal constitution. Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1982); Branan v. Booth, 861

F.2d 1507, 1508 (11th Cir. 1989). "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotations and citations omitted). Although the determination of whether a constitutional decision of the Supreme Court is a matter of federal law, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." Danforth v. Minnesota, 128 S. Ct. 1029, 1048 (2008).

**B. Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271 (11th Cir. 2008); <u>Ferguson</u>, 527 F.3d at 1146; <u>Wright v. Sec'y Dep't of Corr.</u>, 278 F.3d 1245, 1253-54 (11th Cir. 2002).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result.  <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16.  It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them."  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526,

531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted), <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel

claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

### C. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d) and Strickland v. Washington, 466 U.S. 668 (1984). Newland v. Hall, 527 F.3d 1162, 1183-84 (11th Cir. 2008). The Strickland test applies to challenges of counsel's advice on guilty pleas, as well as to convictions by jury. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Coulter v. Herring, 60 F.3d 1499, 1503-04 (11th Cir. 1995).

In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance. First, Petitioner must show that counsel's representation was deficient, i.e., that it fell below an objective standard of reasonableness under prevailing professional norms. In the guilty plea context, the first prong of Strickland requires that the petitioner show that his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. Scott v. U.S., 325 Fed. Appx. 822, 824 (11th Cir. 2009)(citing Hill 106 S.Ct. at 369-70). Counsel owes a lesser duty to a client who pleads guilty

than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and conscious choice between entering a guilty plea and going to trial. <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel is required to make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer her informed opinion as to the best course to be followed in protecting the interests of the client. <u>Id.</u> Collateral relief is only available to a petitioner if he "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." <u>McMann v. Richardson</u>, 397 U.S. 759, 774 (1970).

Second, Petitioner must show that the attorney's deficient performance prejudiced him, i.e., that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show 'a reasonable probability that, but for counsel's errors,' he would have entered a different plea." <u>Scott</u>, 325 Fed. Appx. at 824 (quoting <u>Hill</u> at 370). In evaluating whether there is a reasonable probability that a petitioner would have insisted on going to trial, the court considers whether petitioner had available a defense that would likely have borne fruit at trial. <u>Hill</u>, 474 U.S. at 59.

## III.

After careful review of the record, the Court concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007)("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 550 U.S. at 474; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

The record reflects that the state courts applied the clearly determined federal law as determined by the Supreme Court of the United States. The post-conviction trial court, in its December 2, 2004 order denying Petitioner's Rule 3.850 motion, stated in pertinent part:

> 8.    To prevail on a claim of ineffective assistance of counsel, Defendant must demonstrate that: (1) counsel's performance was deficient, and (2) there is a reasonable probability that the outcome of the proceedings would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984); <u>Williamson v. Dugger</u>, 651 So. 2d 84 (Fla. 1994). As to a claim of ineffective assistance of counsel arising out of the plea process, in order to satisfy the second prong, or the "prejudice" requirement, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have entered a plea and would have insisted on

going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

> 9. The Court notes that in reviewing claims of ineffective assistance of counsel, it must apply a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must avoid the distorting effects of hindsight. The standard is reasonably effective counsel, not perfect or error-free counsel. <u>Coleman v. State</u>, 718 So. 2d 827 (Fla. 4th DCA 1998); <u>Schofield v. State</u>, 681 So. 2d 736 (Fla. 2d DCA 1996). It is further noted that, in general, tactical or strategic decisions of counsel do not constitute ineffective assistance of counsel. <u>Gonzales v. State</u>, 691 So. 2d 602 (Fla. 4th DCA 1997).

Exh. 15 at 3. Thus, the State Court correctly relied upon <u>Strickland</u> and <u>Hill</u> in evaluating each of Petitioner's claims of ineffective assistance of counsel. Therefore, the proper standard for ineffective assistance of counsel was applied by the state court.

Thus, the Court must determine whether the state court unreasonably applied the <u>Strickland</u> and <u>Hill</u> standards to the facts of Petitioner's case. In other words, Petitioner must demonstrate that the state court's decision was "objectively unreasonable" not just incorrect or erroneous. <u>Williams v. Taylor</u>, 529 U.S. at 413.

**Ground I**

In his first ground for relief, Petitioner claims that trial counsel was ineffective because, before he entered his "nolo contendere plea," defense counsel told him he would be able to appeal the trial court's denial of his motion to suppress his confession. Amended Petition at 5. In particular, Petitioner argues that trial counsel advised him that this issue was a

dispositive issue, which could be raised on appeal, when in fact it was a nondispositve issue. Petitioner's Memorandum at 6-9.

As an initial matter, as pointed out by Respondent, and as evidenced by the plea colloquy and executed plea agreement, Petitioner entered a plea of "guilty" and not a plea of *nolo contendere*. Response at 16; Exh. 1 at 6-7. In fact, at the evidentiary hearing, Petitioner conceded that he entered a guilty plea. Exh. 14 at 21. Petitioner's statement to the contrary in this proceeding is refuted by the record.

The post-conviction trial court disposed of Ground I under the prejudice prong. In particular, in denying relief, the court found:

> 10. As to Ground (1), the record reflects that Defendant admits he was granted a belated appeal. Thus, Defendant fails to demonstrate prejudice. Accordingly, this Court need not reach the issue of whether counsel's performance was deficient.

Exh. 15 at 3.

Based upon a review of the record the Court finds that the state court decision was neither contrary to, nor an unreasonable application of, the clearly established principles or an unreasonable determination of the facts. The record reflects that Petitioner was granted a belated appeal and was permitted to raise the issue of the denial of his motion to suppress his confession in his *pro se* Initial Brief on direct appeal.[5] Exh. 6 at 6.

_____

[5]This issue was not properly reserved for appellate review, and

(continued...)

Moreover, the Court finds that the record conclusively demonstrates that there was no deficient performance by counsel because Petitioner affirmatively acknowledged that his guilty plea waived his right to appeal this issue.

Q: I'm just going to go over this with you again. Ground one you're stating that your misadvised you on your ability to appeal the motion to suppress;   correct?

A: Yes, sir.

Q: And, Mr. Senat, were you present when you the plea to the Court?

A: Yes, I was.

Q: Were you brought out of the jail and actually when you were entering the plea?

A: Yes, sir.

Q: And I have a copy of the transcript of the plea, when you entered the plea, Mr. Senat.

A: Uh-huh.

Q: And in that transcript, I'm going to read it the prosecutor says, . . .

CONTINUED CROSS-EXAMINATION
BY MR. SCUDERI:

Q: The prosecutor Mr. Deifik says, "Do you understand that you give up your right to appeal all matters that have occurred up to this time.  Specifically, you give up your right to appeal the rulings of Judge Pack in regard to the Motion to Suppress and any other rulings that have been made previously in this case.  Do you understand that?"   And you respond by, "I understand."   Do you remember that?

---

[5](...continued)
in fact, was not a dispositive issue proper for appeal. Fla. R. App. P. 9.140(b)(2)(A)(i); <u>Brown v. State</u>, 376 So. 2d 382 (Fla. 1979).

A: Yes, sir.

Q: So, if you understood that you were giving up your right [to] appeal the Motion to Suppress, why are you complaining in the 3.850 that you were  misadvised that you couldn't appeal that?

A: Because, sir, I really didn't understand.  See that's -- see what it was, I was just saying yes to get everything over with, because I was entering a plea.  But really I didn't understand really what was being said.  You know what I'm saying?

Exh. 14 at 19-20.  The State court was not persuaded by Petitioner's attempt to retract his previous express acknowledgment that he understood he was waiving his right to appeal the State court's ruling on his motion to suppress.  Sworn statements made in connection with the entry of a guilty plea carries a strong presumption of truthfulness and poses a formidable barrier in subsequent collateral proceedings.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Consequently, the Court denies Ground I of the Amended Petition as without merit.

**Ground II**

Petitioner was afforded an evidentiary hearing in connection with Ground II, in which he submits that counsel misadvised him about the actual time he would serve in jail.  Amended Petition at 4.  In his Memorandum, Petitioner claims that he "accepted a plea offer unintelligently, involuntarily, and unknowingly in that the twenty-five (25) years sentence he received was in excess the amount he was advised he would actually receive." Petitioner's Memorandum at 9.  During his evidentiary hearing, Petitioner

testified that counsel incorrectly calculated the amount of gain time he would have received, and insists that he would have gone to trial and not have accepted the plea agreement if he had known the actual time he was required to serve. Exh. 14 at 8-10.

In denying Ground II, the post-conviction trial court determined that defense counsel's testimony was more credible than Petitioner's testimony. In particular, the court stated as follows:

> 11. As to Ground (2), trial counsel testified that she did not discuss with Defendant the actual amount of gain time Defendant would receive. At the evidentiary hearing trial counsel testified that she advised Defendant that:
>
>> A 10 year minimum mandatory day for day sentence would be imposed. The additional 15 years may be subject to gain time, but that is up to DOC. And I advised him, as I do all clients, that I do not know what DOC will do, I have no authority, the Court has no authority on what DOC will do with that additional 15 years.
>
> Having weighed the credibility of the testimony at the evidentiary hearing, and after observing the demeanor of Defendant and trial counsel, the Court concludes that Defendant fails to demonstrate any misrepresentations on the part of trial counsel as to the amount of gain time he would receive.

Exh. 15 at 3-4.

Based upon a review of the record, the Court finds that the state court decision on this ground was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. §

2254(d).  The record of Petitioner's guilty plea establishes Petitioner was given correct information regarding the sentence. Furthermore, Petitioner's assertion that he would have insisted on going to trial is refuted by his own testimony.  During the evidentiary hearing, a letter written by Petitioner to Judge Monaco was introduced into evidence.  Exh. 14 at 25.  In the letter, Petitioner stated "I was honest about the whole thing from the start.  I never planned to have [sic] went to trial.  In fact, I was waiting on a plea bargain only because I knew I was guilty." Id.  Based upon the foregoing, the Court finds Ground II is without merit.

**Ground III**

In Ground III, Petitioner asserts that counsel was ineffective for failing to require that the court establish a factual basis prior to accepting his plea.  Amended Petition at 5.  Specifically, Petitioner argues that he testified at the plea hearing that the firearm "was not loaded," and thus, the court should not have accepted his plea to robbery with a firearm.  Petitioner's Memorandum at 13.

The post-conviction trial court summarily denied this ground in its June 9, 2004 order.  Exh. 13.  The court held as follows:

> In ground three of the Defendant's motion, he claims his trial counsel was ineffective for failing to ensure an adequate factual basis existed for his plea.  The Defendant pled *nolo contendere* [sic] to one count of armed robbery and received a sentence of twenty-five years in state prison with a ten-year minimum mandatory

imprisonment provision for possession of a firearm. The
Defendant contends that at his plea hearing, he stated on
the record that the firearm he possessed was an unloaded
weapon (see pages 12-13 of attachment). Therefore, the
Defendant concludes that there was no factual basis for
accepting his plea of possession of a firearm. However,
as pointed out by the State in its response, the
definition of a firearm includes the frame of a firearm
and does not require that the firearm be loaded or
operable during the criminal episode. <u>Clayton v. State</u>,
842 So. 2d 971 (Fla. 5th DCA 2003). The Court finds that
the Defendant has failed to establish a *prima facie* case
of ineffective assistance of counsel with respect to
ground three of the motion.

<u>Id.</u> at 1-2.[6]

The Court finds that the State court's summary rejection of

this claim warrants deference. Florida law defines a "firearm" to

include the frame of a firearm and does not require that the

firearm be loaded or operable during the commission of a crime.

<u>Bentley v. State</u>, 501 So. 2d 600, 602 (Fla. 1987). Counsel cannot

be deemed ineffective for failing to raise a non-meritorious

objection. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert.

denied sub nom.</u> <u>Ladd v. Burton</u>, 493 U.S. 842 (1989). Petitioner

was properly advised of the elements of the offense to which he

pled guilty, the facts supported the guilty plea, and Petitioner

cannot show that his plea was constitutionally invalid to warrant

federal habeas relief. <u>See</u> <u>Henderson v. Morgan</u>, 426 U.S. 637, 645

(1976). Consequently, the Court finds Ground III without merit.

---

[6]As noted previously, Petitioner actually pled guilty, not *nolo
contendere*.

**Ground IV**

Petitioner faults trial counsel for failing to pursue the defense of intoxication. Amended Petition at 5. Both Petitioner and defense counsel testified at the evidentiary hearing. Despite Petitioner claiming that he discussed using alcohol and drugs on the day of the crime with his defense counsel, counsel categorically denied ever having any discussion with Petitioner about his drug and alcohol use, or having any knowledge that he allegedly was intoxicated during crime. Exh. 14 at 28-29. In denying this claim, the post-conviction trial court held as follows:

> 12. As to Issue (4), trial counsel indicated that she never discussed with Defendant the possibility of using voluntary intoxication as a defense to the charges against the Defendant. Trial counsel also indicated that she did not have knowledge that Defendant was intoxicated during the commission of the crime, nor did she ever discuss the possibility of Defendant having a drug or alcohol problem. Having weighed the credibility of the testimony at the evidentiary hearing, and after observing the demeanor of Defendant and trial counsel, the Court concludes that Defendant has failed to demonstrate that trial counsel was aware of his alleged voluntary intoxication at the time of the crime. There is nothing in the probable cause affidavit, and defendant has failed to point to any other portion of the record, that may have put trial counsel on notice that voluntary intoxication was a possible defense. A copy of the probable cause affidavit, which was attached to the judgment and sentence, is attached hereto. Furthermore, Defendant did not testify or present any other evidence suggesting that he would have insisted on going to trial if he were aware of the possibility of the voluntary intoxication defense. Consequently, Defendant again fails to demonstrate prejudice.

Exh. 14 at 4.

The Court finds that the state court's denial of Petitioner's ineffective assistance of counsel claim is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Further, Petitioner's claims that counsel failed to pursue a voluntary intoxication defense is waived by Petitioner's guilty plea. It is well established that the entry of a guilty plea waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination, the right of confrontation, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt.[7] <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) (stating "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); <u>Tiemens v. United States</u>, 724 F.2d 928, 929 (11th Cir. 1984) (finding "a guilty plea waives all nonjurisdictional defects occurring prior to

_____

[7]A very narrow exception to the general rule is where the government has no power to prosecute a defendant, <u>United States v. Broce</u>, 488 U.S. 563, 574-75 (1989), which is not applicable to the present case.

the time of the plea, including violations of the defendant's rights to a speedy trial and due process."); <u>United State v. Broce</u>, 488 U.S. 563 (1989). This waiver extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the plea. <u>See</u> <u>Bradbury v. Wainwright</u>, 658 F.2d 1083, 1087 (5th Cir. 1981), <u>cert. denied</u>, 456 U.S. 992 (1982). Thus, only challenges to the voluntariness and intelligent entry of a guilty plea can be advanced on appeal. <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150-51 (11th Cir. 1991). <u>See</u> <u>also</u> <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992). Consequently, the Court finds Ground IV was waived by Petitioner's guilty plea.

**Ground V**

Petitioner includes two additional grounds for relief in his Memorandum, as Grounds V and VI. Included within Ground V, Petitioner raises three separate claims. Petitioner's Memorandum at 15-16. Upon review of the record, it appears that Petitioner raised this three claims in his *Pro Se* Brief from the Lower Court's Denial of Motion for Post-Conviction Relief. Exh. 16.

First, Petitioner contends that the post-conviction trial court erred in denying his claim that counsel was ineffective for failing to appeal the denial of his motion to suppress under the prejudice prong in <u>Strickland</u> because the court failed to properly analyze the merits of Petitioner's motion to suppress. The Eleventh Circuit "has repeatedly held defects in state collateral

proceedings do not provide a basis for habeas relief." <u>Carroll v.</u>
<u>Sec'y Dep't of Corr.</u>, 574 F.3d 1354, 1365 (11th Cir. 2009)(citing
<u>Anderson v. Sec'y Dep't of Corr.</u>, 462 F.3d 1319, 1330 (11th Cir.
2006)(*per curiam*); <u>Quince v. Crosby</u>, 360 F.3d 1259, 1262 (11th
Cir. 2004); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir.
1987)). Therefore, the Court finds no merit to this claim, and
Petitioner does not satisfy the AEDPA.

Second, Petitioner asserts that appellate counsel, who
represented Petitioner during his Rule 3.850 evidentiary hearing,
was ineffective for failing to object to the letter, which was
written by Petitioner and addressed to Judge Monaco, that was
introduced during the hearing. The Court finds this claim likewise
fails to raise a constitutional issue. Significantly, the Supreme
Court has held that "[t]here is no constitutional right to an
attorney in state post-conviction proceedings," and
"[c]onsequently, a petitioner cannot claim constitutionally
ineffective assistance of counsel in such proceedings." <u>Coleman v.</u>
<u>Thompson</u>, 501 U.S. 722, 753-54 (1991). "A petitioner cannot
establish constitutionally ineffective assistance of counsel in
state post-conviction proceedings because there is no
constitutional right to an attorney in such proceedings." <u>Jimenez</u>
<u>v. Sec'y Dep't of Corr.</u>, 481 F.3d 1337, 1344 (11th Cir. 2007). <u>See</u>
<u>also</u> <u>Mize v. Hall</u>, 532 F.3d at 1191 (stating "[b]ecause a
petitioner has no right to counsel during state collateral review,
even grossly ineffective assistance at the collateral review stage,

or no assistance at all, does not constitute cause to excuse a procedural default.").

In his third claim, Petitioner argues that the State erred in taking inconsistent positions on direct appeal and at the evidentiary hearing, and was barred under the doctrine of "judicial estoppel" from taking such contradictory positions. Even assuming *arguendo* the application of the doctrine of judicial estoppel[8] in a habeas action, the Court finds that this claim fails to identify a constitutional violation for which habeas relief can be granted. See <u>Carroll</u>, 574 F.3d at 1365. Further, the record conclusively refutes that the State advanced inconsistent arguments.[9] Based upon the foregoing, the Court concludes that none of the three individual claims raise a federal issue and will dismiss Ground V.

**Ground VI**

In Ground VI, also set forth in Petitioner's Memorandum, Petitioner argues that he was denied equal protection of the laws

---

[8]The doctrine of "judicial estoppel" prohibits a party "from deliberately changing positions according to the exigencies of the moment" and is "an equitable doctrine invoked by a court at its discretion" to "protect the integrity of the judicial process." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-750 (2001)(internal quotations and citations omitted).

[9]On direct appeal, the State joined in the <u>Anders</u> brief submitted by appointed counsel, which acknowledged that the issue concerning suppression of Senat's confession was not preserved for review, and was not otherwise dispositive. Exhs. 3, 5. At the evidentiary hearing, the State argued that the issue concerning Senat's confession was not preserved for appeal because Senat waived any right to appeal the issue when he entered his guilty plea.

because the State court ignored the doctrine of *stare decisis*. Petitioner's Memorandum at 17-18. Specifically, Petitioner claims that in the various cases to which he cited on appeal, the petitioner prevailed. Thus, Petitioner suggests that his constitutional rights have been violated because he did not prevail on similar facts.

*Stare decisis* "compels lower courts to follow the decisions of higher courts on questions of law." 18 Moore's Federal Practice § 134.01 (3d ed. 2006). Further, courts should "not lightly overrule past decisions." McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004); Arizona v. Rumsey, 467 U.S. 203, 212 (1984).

Although cloaked in an equal protection claim, Petitioner essentially disagrees with the State court's rulings on each of his aforementioned grounds. Petitioner has not established that the State court rulings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the State court decisions were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Thus, the Court will deny Ground VI as without merit.

Based upon the foregoing and an exhaustive review of the record, the Court will deny the Petition with prejudice. Any other claims not specifically addressed are found to be without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition for Writ of Habeas Corpus is **DENIED**.

2.  The Clerk of the Court shall enter judgment accordingly and close the file.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability .  Id.  "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). The issues raised by Petitioner does not satisfy these standards. Further, because Petitioner is not entitled to a certificate of

appealability, he is not entitled to proceed *in forma pauperis* on appeal.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___2nd___ day of November, 2009.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record